South Florida Liquor Distributors, Inc. v. Commissioner.
South Florida Liquor Distribs. v. Commissioner
Docket No. 22576.
United States Tax Court
1950 Tax Ct. Memo LEXIS 82; 9 T.C.M. (CCH) 881; T.C.M. (RIA) 50239; October 10, 1950
*82 George H. Salley, Esq., for the petitioner. Newman A. Townsend, Jr., Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined a deficiency in excess profits tax against the petitioner of $11,599.71 for the year 1945. Of the issues joined, only that involving the respondent's disallowance of bad debt deductions of $12,059.65 remains to be decided. Findings of Fact Petitioner, a Florida corporation, was organized about 1935 and is engaged in the business of selling liquor wholesale, its principal place of business being in Miami, Florida. It keeps its books and reports its income on an accrual basis. It filed its returns for 1945 with the collector of internal revenue for the district of Florida. C. A. O'Neil, Jr. has been its president and managing head since its organization. Mannie's Liquor Store, sometimes referred to as Mannie's, is a retail liquor store also located in Miami. The petitioner has done business with Mannie's Liquor Store since it was organized. On or about July 10, 1941, petitioner sold Mannie's a quantity of wines and whiskeys in specially miniature bottles for $23,701.46. This *83 sale was a credit sale and, after entry thereof on petitioner's books, the balance owed by Mannie's to petitioner was $30,488.98. Petitioner continued making sales to Mannie's as it had done before and from time to time received payments on account. On June 30, 1942, the balance owing by Mannie's to petitioner had been reduced to $17,784.95. On that date, petitioner asked for and received a demand note for the balance as stated. Upon receipt of note the amount thereof was credited to Mannie's as payment of the balance then standing in its open account and the note was entered in petitioner's notes receivable account. Payments were made from time to time on the note and by the middle of January, 1943, the balance owing thereon had been reduced to $4,984.95. On January 15, 1943, Mannie's delivered in full satisfaction of the note of June 30, 1942 a new demand note for $4,984.95. To meet the financial demands of its business the petitioner occasionally borrowed money, using customer's notes and accounts receivable as collateral. On dates not definitely shown, but at or about the time the first note was due and during an interval thereafter, the bank from which petitioner borrowed money *84 and with which Mannie's also did business refused to accept either Mannie's open account or demand note as collateral for loans to petitioner. The original location of Mannie's Liquor Store has been described as a "hole-in-the-wall". At some time during 1944 and 1945 its lease expired and it moved to a new location in the duPont Building. The duPont Building was the largest and finest office building in Miami. Mannie's rent in the new location was approximately $1300 per month as compared to $300 per month at its former location. Throughout 1943, 1944 and 1945, petitioner continued to do a credit business with Mannie's Liquor Store. At August 15, 1945, Mannie's open account indebtedness had been paid in full and it was indebted to petitioner only on the demand note dated January 15, 1943 for $4,984.95. Between August 15, 1945 and the end of the year petitioner made further credit sales to Mannie's amounting to $12,092.70. It received cash payments there-one of $18 on or about September 24, 1945 and $5,000 on or about December 26, 1945, and at December 31, 1945 the balance in the account was $7,074.70. At some time during the latter part of January, 1946, when petitioner's books *85 for 1945 were being closed, O'Neil and petitioner's accountant selected accounts totaling $24,950.46 which were to be charged off as uncollectible. Among these accounts were Mannie's demand note for $4,984.95 and the balance of $7,074.70 standing in the open account at December 31, 1945. On the basis of this study of petitioner's accounts receivable O'Neil directed the bookkeeper to charge off the accounts and notes receivable which had been determined upon by him and the accountant. Directions were given at the same time that future sales to Mannie's Liquor Store were to be on a cash-on-delivery basis. The note and December 31 balance in the open account were charged off by appropriate ledger entries dated December 31, 1945. Prior to taking this action O'Neil had made personal efforts, the exact nature of which is not shown, to collect the said indebtedness. In 1946, but on or before January 22, credit sales were made to Mannie's in the total amount of $2,195.32. After January 22, 1946 and throughout the remainder of the year, sales to Mannie's were continued either on a cash-on-delivery basis or upon the basis of payments made shortly after delivery. On or about July 2, 1946, Mannie's *86 indebtedness, not including the amounts charged off as of December 31, 1945, was satisfied by a cash payment of $2,553.76. On or about February 4, 1947, the note for $4,984.95, previously charged off, was paid in full and on or about March 10, 1947 the amount of $7,074.70, charged off from Mannie's open account, was paid in full. These recoveries were reported by petitioner as income for 1947. In its income and declared value excess profits tax return for 1945 petitioner deducted as bad debts owing to it from Mannie's Liquor Store $12,059.65, which amount represented the open account of $7,074.70 and the demand note for $4,984.95. In determining the deficiency herein the respondent disallowed $12,059.65 deduction so claimed. The demand note of Mannie's Liquor Store for $4,984.95 and the $7,074.70 owing by it to petitioner on open account did not become worthless in 1945. Opinion The question is whether or not the indebtedness owing by Mannie's at December 31, 1945 and represented by an open account of $7,074.70 and a demand note for $4,984.95 became worthless in 1945. See section 23(k)(1) of the Internal Revenue Code. [1] In support of its claim that *87 the debts were worthless, the petitioner points to the testimony that the debts were charged off after consideration by petitioner's president, O'Neil, and its accountant pursuant to its established practice of screening debts at the end of each taxable year and that O'Neil, "in his honest opinion" concluded or was of the view that Mannie's was over-extended financially and owed everybody, and further, that O'Neil had made personal efforts to collect the indebtedness but had failed. One of the factors clearly relied upon was that Mannie's operating costs had been substantially increased by the moving of its store from the "hole in-the-wall" location to the duPont Building. The evidence, in our opinion, does not establish worthlessness of Mannie's indebtedness in 1945. We are not advised as to the nature or extent of the efforts made by O'Neil to collect the indebtedness. Neither are we advised as to just why O'Neil and the auditor concluded late in January, 1946, that *88 the debts had become worthless in 1945 rather than at some other time. Rather obviously, it was not because the bank refused to accept Mannie's account as collateral for loans to petitioner since that refusal had occurred back in 1942 or 1943, and even though the bank thereafter continued to refuse the note and account receivable as collateral for the loan, there is nothing in the record which would show worthlessness of the note in 1945 as against 1943 or 1944. As to the open account, the history of the transaction between the petitioner and Mannie's fails to support a conclusion of worthlessness in 1945. After the $23,701.46 sale in July, 1941, Mannie's account stood at $30,488.98. By June 30, 1942, the balance had been reduced to $17,784.95, and by the middle of January, 1943, had been further reduced to $4,984.95. At that time the old note was satisfied by the giving of a new demand note for $4,984.95. Petitioner continued to make credit sales to Mannie's and to receive payments thereon to the end that at August 15, 1945, the account was in balance and Mannie's owed petitioner only the amount due on the note. The open account sales, which petitioner charged off and for which deduction *89 is here claimed, were made between August 15, 1945 and December 31, 1945 and during that interval petitioner had received from Mannie's in partial satisfaction of the open account cash payments totaling $5,018. Furthermore, in January of 1946 petitioner made further sales to Mannie's on open account, and, while its sales after the latter part of January were made on a cash-on-delivery basis or on the basis of payment shortly after delivery, the balance which had accumulated on Mannie's open account during 1946 was satisfied in full on or about July 2, 1946 by a cash payment of $2,553.76. Finally, the entire balance charged off on the open account as of December 31, 1945 was paid in full in 1947, as was the demand note for $4,984.95. It is our opinion that the facts shown by the evidence do not show that the indebtedness owing by Mannie's to petitioner at December 31, 1945 had become worthless in that year. Petitioner's claim must, therefore, be denied. All other items entering into the determination of the deficiency either were not put in issue by petitioner in this proceeding or have been conceded. Decision will be entered for the respondent. Footnotes
1. SEC. 23 DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * (k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; * * *↩